IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

ROBERT J. HEINITZ and SANDRA
L. HEINITZ, on Behalf of Themselves
and Others Similarly Situated,

        Plaintiffs,

    v.

SETERUS, INC.,

        Defendant.

**CLASS ACTION COMPLAINT**
[JURY TRIAL DEMANDED]

Case No.: 1:18-CV-1076 (LEK/ATB)

Robert J. Heinitz and Sandra L. Heinitz ("Plaintiffs"), on behalf of themselves and all others similarly situated, file this class action complaint against Seterus, Inc. ("Seterus" or "Defendant") and state:

**NATURE OF THE ACTION**

1.    Plaintiffs bring this consumer class action on their behalf and on behalf of others similarly situated to obtain redress from Seterus' systematic use of misleading, deceptive, unfair, and unlawful debt collection practices to collect upon residential consumer mortgage loans in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1962, *et seq.* ("FDCPA").

2.    Specifically, Seterus sends homeowners form letters (the "New York Final Letter") stating that the borrowers are in default of their mortgages and that their failure to make a full and complete payment of all arrearages will result in acceleration of their loan and commencement of foreclosure proceedings.

3.    In truth, however, Seterus' policy and practice is not to accelerate loans, or to initiate foreclosure proceedings, in instances where there is an arrearage, so long as the borrower makes a partial payment sufficient to bring the loan less than 45 days delinquent.

4.      Accordingly, each of the New York Final Letters sent by Seterus falsely and misleadingly suggest that Seterus will accelerate the loan or commence foreclosure proceedings absent full payment, in contradiction to Seterus' actual policy not to accelerate a loan or commence foreclosure proceedings so long as any payment sufficient to bring the loan less than 45 days delinquent is made prior to the expiration date set forth in the New York Final Letter.

5.      The New York Final Letter sent by Seterus to Plaintiffs and others similarly situated is a false and misleading threat of acceleration and foreclosure designed to intimidate borrowers into making payments to Seterus that are beyond their means and beyond what is necessary to avoid acceleration and save their homes from foreclosure.

6.      This class action is filed pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who are members of the Class (defined below) to whom Seterus has sent or will send a New York Final Letter during the applicable Class Period (defined below).

## JURISIDICTION AND VENUE

7.      This Court has original subject matter jurisdiction under 28 U.S.C. § 1331 in that this action arises under, *inter alia*, the Fair Debt Collection Practices Act, 15 U.S.C. 1692 *et seq*.

8.      This Court has jurisdiction of the FDCPA, KCPA claims under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711–1715, in that (i) the putative class contains more than 100 members; (ii) the class claims total more than $5 million; and, (iii) there is minimal diversity because Seterus is a citizen of a different state than Plaintiff or at least one member of the Class, some of whom have moved outside of New York in the past three years, such that there is minimal diversity.

9.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 in that the state law allegations contained herein are so related to the claims asserted under 15 U.S.C. 1692 *et seq*.

over which the Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

10.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred in Ulster County, New York.

## PARTIES

11.     Plaintiffs are citizens and residents of Ulster County, New York.

12.     Plaintiffs are "consumers" as that term is defined by 15 U.S.C. § 1692a(3).

13.     Seterus is a corporation organized and existing under and by virtue of the laws of the State of Delaware with a principal place of business in Research Triangle Park, North Carolina.

14.     Seterus frequently acts as a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), including with regard to Plaintiffs' mortgage loan, because Seterus obtained the servicing rights while in a state of default.

15.     Seterus is regularly engaged in the business of collecting debt in the State of New York. Its employees, affiliates, directors, agents, and attorneys act under the direction and supervision of Seterus and, therefore, Seterus is directly and/or vicariously liable for the actions of its employees, affiliates, directors, agents, and attorneys under, *inter alia*, the theory of *respondeat superior*.

## FACTUAL ALLEGATIONS

16.    Plaintiffs own a residential home located at 1946 Lucas Avenue, Cottekill, NY 12419.

17.    Plaintiffs' home is secured by a mortgage owned, backed, or controlled by Federal National Mortgage Association ("Fannie Mae") that is serviced by Seterus.

18.    Upon information and belief, Seterus is a specialty mortgage servicer for high risk residential housing loans owned, backed, or controlled by Fannie Mae.

19.    As a mortgage servicer, Seterus contracts with Fannie Mae to collect payments, fees, and other amounts owed by the home owner and to provide other "services" to investors relating to the home owner's loan.

20.    Upon information and belief, Seterus earns money based upon a percentage of the funds that it collects from consumers' mortgage payments as well as through the assessment of late fees and other penalties.

21.    Plaintiffs' mortgage loan is governed by a promissory note (the "Note") that defines "default" as failure to "pay the full amount of each monthly payment on the date it is due . . . ."

22.    Plaintiffs' loan was delinquent when transferred to Seterus for servicing on or about March 1, 2015.

### The Scope of Seterus' Collection Activities

23.    Seterus is not a bank and does not lend money to purchasers for home loans.

24.    Seterus is not owned or controlled by a bank, corporation or association engaged in accounting, bookkeeping, or data processing services where a primary component of such services is the rendering of statements of accounts and bookkeeping servicers for creditors.

25.    Upon information and belief, Seterus services hundreds of thousands of loans

throughout the United States.

26.    Because Seterus does not originate home mortgage loans, it only becomes involved with homeowners by acquiring the servicing rights to their mortgage loans as part of a portfolio of loans from Fannie Mae, or if Fannie Mae or other entity assigns or transfers the servicing rights to Seterus of a portfolio of loans from another servicer.

27.    Seterus is a "specialty" mortgage servicer that primarily services high risk portfolios owned or backed or otherwise controlled by Fannie Mae or other entities.

28.    Seterus' specialty is servicing residential mortgage loans that are in default or at an increased risk of default.

29.    Accordingly, a high percentage of the residential mortgage loans serviced by Seterus experience one or more payment delinquencies of 45 days or more.

30.    Upon information and belief, when loans for New York homeowners became more than 45 days delinquent over the Class Period, Seterus sends each mortgagor the New York Final Letter.

31.    Upon information and belief, to this day, Seterus continues to send a version of the New York Final Letter to New York homeowners whose loans become more than 45 days delinquent.

**Seterus' Violations of the Fair Debt Collection Practices Act Vis-à-Vis Plaintiffs**

32.    On or about March 1, 2015, Plaintiffs' mortgage was service transferred to Seterus while in a state of delinquency.

33.    Since that time, Seterus has alleged the Plaintiffs to be more than 45 days delinquent on their mortgage and sent Plaintiffs numerous New York Final Letters.

34.    Attached as **Exhibit A** is a true and correct copy of a New York Final Letter sent

by Seterus to Plaintiff Sandra Heinitz.

35.    Upon information and belief, Plaintiffs have received and read numerous New York Final Letters during the Class Period.[1]

36.    Upon information and belief, **Exhibit A** is substantially the same form of letter sent to all borrowers in New York who are alleged to be more than 45 days delinquent on a loan that Seterus services.

37.    Seterus's correspondence to Plaintiffs, as set forth herein, and similar form letters to Class members expressly state "THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR" (emphasis in original).

38.    The New York Final Letter specifically states:

> If full payment of the default amount is not received by us . . . on or before [the Expiration Date], *we will accelerate the maturity date of your loan* and upon such acceleration the ENTIRE balance of the loan, including principal, accrued interest, and all other sums due thereunder, shall, at once and without further notice, become immediately due and payable.

**Exhibit A**. (*emphasis added*).

39.    The New York Final Letter further states:

> If you send only a partial payment, the loan still will be in default . . . IF THE DEFAULT IS NOT CURED ON OR BEFORE THE EXPIRATION DATE, THE LOAN OWNER AND WE INTEND TO ENFORCE THE LOAN OWNER'S RIGHTS AND REMEDIES AND MAY PROCEED WITHOUT FURTHER NOTICE TO COMMENCE FORECLOSURE PROCEEDINGS.

*Id.* (emphasis in original).

40.    Seterus has contractual obligations to provide notices to mortgagors like Plaintiffs

---

[1] **Exhibit A** is an example of the New York Final Letters sent to Class members. "New York Final Letters" includes all form letters sent by Seterus during the Class Period that contain the passages alleged to violate the FDCPA in the ways alleged in this Class Action Complaint.

of the occurrence of a deficiency qualifying as a default.

41.    Rather than simply providing notice, Seterus instead utilizes the New York Final Letters to make false, misleading, and overbroad threats to accelerate the note and to commence foreclosure proceedings.

**Seterus' Actual Corporate Policy and Practic**e

42.    The New York Final Letters create a false sense of urgency by threatening to accelerate the entire indebtedness of a consumer's loan if "full payment of the default amount is not received . . . on or before the Expiration Date," when Seterus' actual policy, attested to in sworn testimony by a corporate officer, is to not accelerate loans that are less than 45 days delinquent.

43.    On July 19, 2016, Seterus's 30(b)(6) deposition testimony was taken in *Hager v. Seterus, Inc.*, 1:15-cv-222 (W.D.N.C.) pursuant to the Notice of Deposition to Seterus, Inc..

44.    A true and accurate copy of the 30(b)(6) Notice of Deposition from *Hager v. Seterus, Inc.* is attached hereto as **Exhibit B**.

45.     Seterus designated Achsah Jacob, a "legal mediation officer," to testify as to the topics identified in the Notice of Deposition to Seterus, Inc.

46.    During Seterus' 30(b)(6) deposition, Achsah Jacob testified as follows:

Q.    My understanding of your testimony just now is that if Seterus receives a payment in response to an NC Final, then the debt is no longer 45 days due and so that's sufficient to hold off the acceleration process?

Q.    Okay. And is that -- is that Seterus' policy just with regard to North Carolina?

A.    Seterus' policy for the loans where we are accepting payments and we're able to apply full contractual payment to the loan.

Q.    Okay. So in response to a letter like Exhibit 11[2], Seterus' policy, if they're accepting

---

[2]Exhibit 11 (a true and accurate copy of which is attached hereto as **Exhibit D)** was a North Carolina Final Letter substantially similar to **Exhibit A**. This deposition was taken in North

payments, is if they receive an amount equal to a normal monthly payment, they will not accelerate the debt?

A.    As long as, right, it brings the loan less than 45 days due.

Q.    Okay. Where does it say that in this letter that if you make one payment or enough such that one payment is recorded, we won't do this, or does it say that?

A.    Well, the expiration date provides really the -- the timeline where the customer needs to make some sort of payment so that the 45 days are not past due.

Q.    Not some sort of payment, $3,204.72, that's what it says, right?

A.    Yes. And we're allowing the customer, we're also -- yes. We would like the $3,204.72. But our objective is not to foreclose on our customers. Our objective is to be able to take -- even if it's a partial payment, if where -- if 'in the bucket where a partial payment can be made, our objective is to collect that payment to help them stay in their house. Because them making payments, staying in their house helps us in our business as well. Foreclosing on them is really not, you know, helpful to us nor to them.

Q.    Yeah.

A.    And so therefore, this letter is sent out per the guidelines that are outlined and we allow the customer -- we allow the customer to make that partial payment. And then when a full -- if a partial payment does not equal the contractual payment, then your -- then this letter still -- still stands. But because a contractual payment is able to be applied to the loan account, then we don't have to continue with the -- this letter.

[Seterus Dep. at pp. 177:11-180:10].

47.    A true and accurate copy of a portion of Seterus's 30(b)(6) Deposition from Hager is attached hereto as **Exhibit C**.

48.    According to Achsah Jacob, Seterus does not accelerate borrowers' loans and proceed to foreclosure even if the borrower fails to make a full payment equal to the default amount or amount due listed in the New York Final Letter and fails to make any additional payments that come due during the notice period.

---

Carolina in regards to a North Carolina Final Letter; however, the North Carolina Final Letter and the New York Final Letters are substantially similar and the legal issues therein are comparable.

49.     Put simply, Seterus does not customarily accelerate loans under the terms threatened by its New York Final Letter if homeowners make a partial payment sufficient to bring their loan less than 45 days past due.

50.     The New York Final Letters misrepresent the conditions under which Seterus intends to accelerate loans and deceives consumers into believing their loans will be accelerated if they fail to fully cure their default prior to the "expiration date."

51.     The New York Final Letters cause the least sophisticated consumers to believe that they will lose their homes if *all* arrearages to Seterus are not paid by the stated expiration date; which is not true.

52.     The New York Final Letters cause the least sophisticated consumers to believe that they will lose their homes if they do not bring their loan current by the stated expiration date; which is not true.

53.     The New York Final Letters misrepresent Seterus's intentions and present homeowners with a false ultimatum that they must satisfy all arrearages within the deadline or face acceleration and immediate commencement of foreclosure proceedings.

54.     The New York Final Letters were materially misleading in that they threatened homeowners with acceleration and foreclosure when Seterus had neither the present intent, nor the present ability, to undertake such actions.

55.     The false or misleading threats of acceleration and foreclosure contained within the New York Final Letter are designed to scare and intimidate homeowners into paying all delinquent amounts, even if such payment is not required to avoid acceleration or the commencement of foreclosure proceedings.

56.     The false or misleading threats of acceleration and foreclosure contained within the

New York Final Letter have the potential of causing individuals to send additional money to Seterus that, absent the false and misleading statements, they could have utilized on other necessary expenditures, including food and utility payments.

57. The misleading threats of acceleration and foreclosure make it impossible for the least sophisticated consumer to make a rational decision in response to the New York Final Letter because it threatens immediate, irreversible consequences.

58. The misleading threats of acceleration and foreclosure are designed to scare homeowners into making payments they otherwise may not make.

59. Upon information and belief, Seterus willfully crafted the New York Final Letter in such a way to frighten and intimidate consumers into paying money to Seterus in violation of federal and New York fair debt collection statutes.

60. By misrepresenting Seterus' actual policies and practices, the New York Final Letter deprived New York homeowners of accurate, non-misleading information upon which they could choose the best course of conduct for their individual financial and family situations.

61. Accordingly, the New York Final Letters threaten action not actually intended to be taken by Seterus in the ordinary course of business where the borrower makes a partial payment, and constitute unfair threats, coercion, or attempts to coerce payments from consumers in violation of the FDCPA.

62. Upon information and belief, Seterus uses substantially identical language in all of its New York Final Letters that are sent to New York homeowners whose mortgage loans are 45 or more days past due.

63. Plaintiffs have received and read numerous New York Final Letters substantially identical to Exhibit A.

64.    Upon information and belief, each Class member has received one or more New York Final Letter within the applicable statute of limitations.

65.    Each New York Final Letter constitutes a separate violation of the FDCPA in that, *inter alia,* the New York Final Letter threatens to take action not taken by Seterus in the ordinary course of business and that it did not intend to take.

66.    As a result of the foregoing, Plaintiffs have been deprived of accurate information from which to make informed decisions in response to Seterus' collection attempts.

**Defendant's Violations Were Willful**

67.    As an acknowledged debt collector subject to the FDCPA Seterus and its officers, managers, and employees are aware that these fair debt statutes forbid threatening to take action that the debt collector does not intend to take, and from making false or misleading statements to debtors.

68.    Seterus purposely crafted the New York Final Letter to threaten action that Seterus knew, based on its own corporate policy and practice as alleged herein, it did not intend to take.

69.    In so doing, Seterus and its agents, officers, managers, and employees willfully violated the FDCPA.

70.    The risk of violation of the FDCPA by Seterus's mailing of the New York Final Letter over the Class Period was more than merely careless.

**<u>CLASS ALLEGATIONS</u>**

71.    Pursuant to Federal Rules of Civil Procedure 23, Plaintiffs brings this action on behalf of a Class defined as follows:

> All New York residential mortgagors whose mortgage servicing was transferred to Seterus while in a state of default, to whom Seterus sent a letter substantially similar to the New York Final Letter attached as Exhibit A to this Class Action Complaint, in that the

letter warned of immediate acceleration of the loan and/or commencement of foreclosure proceedings, upon less than full payment of the "amount due" or "default amount," during the relevant statutory time periods under the FDCPA (one year) and NY GBL § 349 (three years) preceding the date of the filing of this Class Action Complaint.

Excluded from the Class are officers, directors, and managers of Seterus; the Court; and staff of the judicial officer(s) assigned to this action.

72.     The Class shall be for the relevant statutory time periods under the FDCPA (one year) and NY General Business Law § 349 (three years) preceding the filing of this Class Action Complaint and ending on the last day of trial or, in the event of a class settlement, ending on the date of entry of an order preliminary approving such class settlement, whichever is later (the "Class Period").

73.     *Numerosity*: Upon information and belief, the Class contains several thousand members, based upon an analysis of the volume of Seterus's mortgage default servicing activity nationwide and in New York.

74.     The size of the Class is so numerous that joinder of all members would be impracticable.

75.     *Commonality*: Several common questions of law or fact pertaining to claims of the Class and of the Subclass are presented in this action, including without limitation:

- o   Were Seterus's communications seeking to collect amounts it claimed were in default on home mortgages a form of "debt collection" under the FDCPA?

- o   Is Seterus a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692(a)(6), when it communicates with homeowners whose mortgage servicing rights it acquired after default?

- o   What were Seterus's policies and practices concerning acceleration of defaulted loans upon receipt of a partial payment?

- o   What were Seterus' policies and practices concerning the commencement of foreclosure proceedings against homeowners who made a partial payment of the

> "amount due" or "default amount" as described in Seterus' New York Final Letter?

> o   Does the New York Final Letter violate the FDCPA in one or more of the ways alleged?

> o   Does the New York Final Letter violate the NY GBL § 349?

76.    *Typicality*: The claims of Plaintiffs are typical of the claims of the Class and all are based on the same facts and legal theories, as all such claims arise out of the complained-of Seterus' conduct.

77.    *Adequate Representation:* Plaintiffs are adequate representatives of the Class in that they are members of the Class and do not have antagonistic or conflicting claims with other Class members.

78.    Plaintiffs have also retained counsel experienced in the prosecution of complex class actions, specifically including fair debt class actions involving mortgages.

79.    Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action.

80.    Plaintiffs are aware of their responsibilities as class representatives and have accepted such responsibilities.

81.    *Injunctive or Declaratory Relief.* The grant of injunctive or declaratory relief is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Seterus has acted and continues to act in violation of the FDCPA with respect to all New York homeowners whose mortgages it services.

82.    Seterus has acted and refused to act on grounds generally applicable to the Class making final injunctive and declaratory relief appropriate.

83.    *Predominance*: Under Federal Rule of Civil Procedure 23(b)(3), the common questions of law and fact listed above, and others, predominate over any individual issues that may

be presented.

84.    Seterus has sought to and continues to attempt to collect amounts it claims are due under defaulted home loan in New York using form letters, and its policies and practices regarding partial payments were and are consistently applied to all homeowners.

85.    *Superiority*: Under Federal Rule of Civil Procedure 23(b)(3), the Class is appropriate for certification because a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

86.    Actual tangible damages are unlikely based upon the violations alleged, and the statutory damages sought on behalf of Class members are small, such that individual Class members could not economically pursue individual actions.

87.    Absent a class, Class members would be unlikely to receive any recovery.

88.    Accordingly, individual Class members do not have an interest in controlling the prosecution of separate actions.

89.    Plaintiffs' counsel anticipate no undue difficulties in the management of this action on a class basis.

90.    Alternatively, absent a class courts throughout New York may be confronted with a multiplicity of lawsuits, which would unnecessarily burden the courts while also creating the risk of inconsistent rulings and contradictory judgments.

## FIRST CAUSE OF ACTION

(Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*)

91.    Plaintiffs repeat and reallege the allegations in the preceding paragraphs as if set forth herein.

92.    Seterus frequently acts as a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

93.    Each member of the proposed FDCPA Sub-Class are "consumers," as that term is defined by the FDCPA, 15 U.S.C. § 1692a(3).

94.    Each member of the proposed FDCPA Sub-Class has a "debt," as defined by the FDCPA, 15 U.S.C. § 1692a(5).

95.    Each member of the proposed FDCPA Sub-Class has a debt for which Seterus acquired the servicing rights after the debt was in default.

96.    The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

97.    Seterus is a "debt collector," as defined by the FDCPA, 15 U.S.C. § 1692(a)(6).

98.    Seterus is a debt collector in servicing Plaintiffs' mortgage because her loan was in default at the time Seterus obtained the servicing rights.

99.    Plaintiffs and all members of the Subclass are "consumers," as defined by the FDCPA, 15 U.S.C. § 1692(a)(3), since they are natural persons allegedly obligated to pay a consumer debt.

100.    At all material times, Plaintiffs' debt and the debts of the Subclass members were "debt," as defined by the FDCPA, 15 U.S.C. § 1692(a)(5).

101.    Dunning letters such as those attached as Exhibits A-C hereto are to be evaluated by the objective "least sophisticated consumer" standard.

102.    FDCPA 15 U.S.C. § 1692(e) states in part:

A debt collector may not use false, deceptive, or misleading representations or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . .

(5)    The threat to take any action that cannot legally be taken or that is not intended to be taken.

. . .

(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

103.    Seterus has attempted to collect debt in violation of 15 U.S.C. § 1692(e), in that it used false representations and deceptive means to collect or attempt to collect the Debt; threatened action it did not intend to take; and/or threatened to take action that it could not legally take.

104.    Seterus has attempted to collect debt in violation of 15 U.S.C. § 1692(e), in that it utilized false threats and misleading representations regarding the amounts that consumers must pay, and when they must pay it, in order to continue to own their homes.

105.    Seterus has attempted to collect debt in violation of 15 U.S.C. § 1692(e) in that it falsely represented its intention to accelerate and foreclose on Plaintiffs' home in an effort to induce the payment of additional funds.

106.    Seterus has attempted to collect debt in violation of 15 U.S.C. § 1692(e), in that it misrepresented its intentions and presented Plaintiffs and other consumers with a false ultimatum that they must pay all arrearages within the false deadline identified in the New York Final Letters, or face immediate acceleration and initiation of foreclosure proceedings.

107.    Seterus has attempted to collect debt in violation of 15 U.S.C. § 1692(e), in that it has threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures under the terms threatened in its New York Final Letter.

16

108.    Seterus' violations of 15 U.S.C. § 1692(e) were material, *inter alia*, because the New York Final Letter mislead consumers about information necessary to permit them to determine their best course of conduct; created a substantial risk of causing homeowners to make less than optimal decisions in managing their finances; and increased and foreseeably increase the anxiety of homeowners regarding the risk of immediate acceleration or commencement of foreclosure proceedings.

109.    Moreover, Congress has expressly determined that Seterus's violations are material by specifically designating that threats to take actions that the debt collector does not intend to take are an unfair collection practice and a violation of the FDCPA.

110.    Seterus has attempted to collect debt in violation of 15 U.S.C. § 1692(e) by using false representations and deceptive means, including false threats of acceleration and commencement of foreclosure proceedings, and the New York Final Letters are therefore illegal.

111.    FDCPA § 1692(f) states in pertinent part that "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

112.    Seterus has attempted to collect debt in violation of 15 U.S.C. § 1692(f) in that it unfairly utilized false threats and misleading representations regarding the amounts that consumers must pay, and when they must pay it, in order to continue to own their homes.

113.    Seterus has attempted to collect debt in violation of 15 U.S.C. § 1692(f) in that it falsely represented its intention to accelerate and foreclose on Plaintiffs' home in an effort to induce the payment of additional funds.

114.    Seterus has attempted to collect debt in violation of 15 U.S.C. § 1692(f), in that it misrepresented its intentions and presented Plaintiffs and other consumers with a false ultimatum that they must satisfy all arrearages within the false deadline identified in the New York Final

Letters, or face acceleration and ultimately foreclosure.

115.    Seterus has attempted to collect debt in violation of 15 U.S.C. § 1692(f), in that it has threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures.

116.    Seterus has attempted to collect debt in violation of 15 U.S.C. § 1692(f) by using unfair and unconscionable means, including false threats of acceleration and foreclosure.

117.    As a result of Seterus' unlawful attempts to collect debt, Plaintiffs and the FDCPA Class Members are entitled to statutory damages, as well as their reasonable attorneys' fees.

**SECOND CAUSE OF ACTION**
(Violation of NY GBL § 349)

118.    Plaintiffs repeat and reallege the allegations in the preceding paragraphs as if set forth herein.

119.    New York General Business Law section 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

120.    An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." N.Y. Gen. Bus. Law § 349(h).

121.    Seterus engaged in deceptive acts and practices in the conduct of their businesses.

122.    Seterus's conduct has had a broad impact on consumers at large.

123.    Seterus committed the deceptive acts and practices willfully and/or knowingly.

124.    Seterus's wrongful and deceptive acts have caused injury and damages to Plaintiffs and class members and unless enjoined, will cause further irreparable injury.

125.    Seterus's violations of NY GBL § 349 include, but are not limited to:

a.  Seterus has falsely represented that failure to immediately and completely satisfy all arrearages would result in acceleration of their loan in contravention of Seterus's specific intentions and ordinary practices;

b.  Seterus has attempted to collect debt using false representations and deceptive means to collect or attempt to collect the Debt;

c.  Seterus has threatened action it did not intend to take;

d.  Seterus has threatened to take action that it could not legally take;

e.  Seterus has attempted to collect debt utilizing false threats and misleading representations regarding the amounts that consumers must pay, and when they must pay it, in order to continue to own their homes;

f.  Seterus has attempted to collect debt utilizing false threats and misleading representations regarding the amounts that consumers must pay, and when they must pay it, for the sole purpose of coercing additional payments;

g.  Seterus has falsely represented its intention to accelerate and foreclose on Plaintiff's home in an effort to induce the payment of additional funds;

h.  Seterus has misrepresented its intentions and presented Plaintiffs and other consumers with a false ultimatum that they must satisfy all arrearages within the false deadline identified in the NY Final Letters, or face acceleration and ultimately foreclosure;

i.  Seterus has threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures and when such actions are not taken in the usual course of business; and

j.  Seterus has attempted to collect debt by using unfair threats and coercion,

including empty threats of acceleration and foreclosure.

126.    As a direct and proximate result of these violations of section 349 of the General Business Law, Plaintiffs and putative class members have suffered compensable harm and are entitled to preliminary and permanent injunctive relief, and to recover actual and treble damages, costs and attorney's fees.

## JURY DEMAND

Plaintiffs hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Robert J. Heinitz and Sandra L. Heinitz, on their own behalf and on behalf of all others similarly situated, pray the Court for judgment as set forth below:

1.    Certifying this action as a class action as provided by Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, appointing Plaintiffs as class representatives, and appointing the undersigned as Class counsel;

2.    Declaring that Seterus has violated the FDCPA and NY GBL § 349 in the ways alleged in this Class Action Complaint;

3.    Enjoining further violations of the FDCPA and NY GBL § 349 by Seterus and its agents and employees;

4.    Awarding Plaintiffs and the Class statutory damages under the FDCPA and NY GBL § 349;

5.    Awarding Plaintiffs and the Class their reasonable attorneys' fees and costs incurred pursuant to the FDCPA and the NY GBL § 349;

6.    Ordering that the costs of this action be taxed to Seterus; and

7.  Providing such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s Elmer Robert Keach, III

Dated:  September 7, 2018

_____
Elmer Robert Keach, III, Esquire
NYND Bar Roll Number 601537
Maria K. Dyson, Esquire
LAW OFFICES OF ELMER ROBERT
   KEACH, III, PC
One Pine West Plaza, Suite 109
Albany, NY  12205
518.434.1718
bobkeach@keachlawfirm.com

Scott C. Harris (NC 35328)
Patrick M. Wallace (NC 48138)
WHITFIELD BRYSON & MASON, LLP
900 W Morgan St
Raleigh, NC  27603
Phone: (919) 600-5000
Fax: (919) 600-5035
scott@wbmllp.com
pat@wbmllp.com

Edward H. Maginnis (NC 39317)
Karl S. Gwaltney (NC 45118)
Asa C. Edwards (NC 46000)
MAGINNIS LAW PLLC
4801 Glenwood Ave, Suite 310
Raleigh, NC  27612
Phone: (919) 526-0450
Fax: (919) 882-8763
emaginnis@maginnislaw.com
kgwaltney@maginnislaw.com
aedwards@maginnislaw.com

*Counsel for Plaintiffs and the Proposed Class*

# EXHIBIT A



PO Box 1077; Hartford, CT 06143-1077

**Business Hours (Pacific Time)**
Monday-Thursday 5 a.m. to 8 p.m.
Friday 5 a.m. to 6 p.m.

**Physical Address**
14523 SW Millikan Way; Suite 200; Beaverton, OR 97005

**Payments**
PO Box 11790; Newark, NJ 07101-4790

**Correspondence, Inquiries, and Notices**
PO Box 1077; Hartford, CT 06143-1077

Phone: 866.570.5277
Fax: 866.578.5277
www.seterus.com

HEINITZ, SANDRA L          L115AQ.1
PO BOX 53
COTTEKILL, NY 12419



December 20, 2017
Loan number: 28394795
Serviced by Seterus, Inc.

RE: 1946 LUCAS AVENUE
    COTTEKILL, NY 12419-5128

Your loan is in default, due to the non-payment of the following amount:
    Amount Due:    $4,315.41
    Amount Due By: January 24, 2018 ("Expiration Date")

We hereby demand that you bring your loan up to date ("cure this default") by payment of the amount due stated above. In addition, your regular payment may become due by the Expiration Date. The amount quoted may increase due to future installments that become due and/or fees that may be assessed.

If full payment of the default amount is not received by us in the form of a certified check, cashier's check, or money order on or before January 24, 2018, we will accelerate the maturity date of your loan and upon such acceleration the ENTIRE balance of the loan, including principal, accrued interest, and all other sums due thereunder, shall, at once and without further notice, become immediately due and payable.

Failure to cure the default on or before January 24, 2018 may result in acceleration of the sums secured by the mortgage and may result in the sale of the premises. If you send only a partial payment, the loan still will be in default. Additionally, we will keep the payment and may accelerate the maturity date.

IF THE DEFAULT IS NOT CURED ON OR BEFORE THE EXPIRATION DATE, THE LOAN OWNER AND WE INTEND TO ENFORCE THE LOAN OWNER'S RIGHTS AND REMEDIES AND MAY PROCEED WITHOUT

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT. THIS NOTICE IS BEING FURNISHED FOR YOUR INFORMATION AND TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS. IF YOU RECEIVE OR HAVE RECEIVED A DISCHARGE OF THIS DEBT THAT IS NOT REAFFIRMED IN A BANKRUPTCY PROCEEDING, YOU WILL NOT BE PERSONALLY RESPONSIBLE FOR THE DEBT. COLORADO: SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. NEW YORK CITY: 1411669, 1411665, 1411662. TENNESSEE: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR 97005.

**EXHIBIT**

**A**

PENGAD 800-631-6989

Page 1 of 2

HEINITZ, SANDRA L
December 20, 2017
Loan number: 28394795

FURTHER NOTICE TO COMMENCE FORECLOSURE PROCEEDINGS. FORECLOSURE PROCEEDINGS WILL NOT BE COMMENCED UNLESS AND UNTIL ALLOWED BY APPLICABLE LAW. ADDITIONAL FEES SUCH AS FORECLOSURE COSTS AND LEGAL FEES MAY BE ADDED PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.

Nothing contained in this letter or in any other communication regarding the loan shall modify or waive any term or provision of the loan. The status of your loan may be reported to credit reporting agencies.

You have the right to reinstate your loan after acceleration and the right to bring a court action or assert in the foreclosure proceedings the nonexistence of a default or any other defense to acceleration and sale. If you reinstate your loan after acceleration, the loan no longer will be immediately due in full.

If you have any questions, please contact us at 866.570.5277. For borrowers having difficulty making their payments, we have loan specialists available Monday-Thursday 5 a.m. to 9 p.m., Friday 5 a.m. to 6 p.m., and Saturday 9 a.m. to 12 p.m. (Pacific time). Saturday hours may vary.

Sincerely,


Seterus, Inc.

Enclosure(s): SCRA Notice


IMPORTANT NOTE(S):
This letter does not impact any loss mitigation offers that you may have recently received; you can still choose to accept that offer by responding as directed in that offer.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil Action No.: 1:15-cv-222

MICHAEL A. HAGER and )
CYNTHIA G. HAGER, )
 )
     Plaintiffs, )
 )
  v. )
 )
SETERUS, INC., )
 )
     Defendant. )
 )

**NOTICE OF DEPOSITION TO
SETERUS, INC.**

**TO:**  Jasmine K. Gardner
BRADLEY ARANT BOULT CUMMINGS LLP
Bank of America Corporate Center
100 N. Tryon Street, Suite 2690
Charlotte, North Carolina 28202
Fax: 704.338.6077
jgardner@bradley.com
*Counsel for Defendant Seterus, Inc.*

    **PLEASE TAKE NOTICE** that pursuant to Rule 30(b)(6) of the Federal Rules of Civil
Procedure, the undersigned counsel for Plaintiff will take the deposition of the designated
corporate officials representing Defendant Seterus, Inc. (hereinafter "Defendant" or "Seterus") on
the date, time and location listed below:

        Date:           July 11, 2016
        Time:          10:00 AM
        Location:    Maginnis Law, PLLC
                     4801 Glenwood Avenue, Suite 310
                     Raleigh, North Carolina 27612

    The deposition may be recorded by videotape and stenographic means before a duly
authorized officer and will continue from day to day until completed.

1



# PRELIMINARY STATEMENT

The Defendant noticed in this deposition is obligated to produce a knowledgeable witness about the facts, issues and documents referenced in this document. It may require the designation of more than one person. For the purposes of this deposition, please consider the following precedential cases to be a summary of the requirements Plaintiffs contend Defendant has to meet to produce a knowledgeable witness(es) in this matter.

The corporate designee need not have firsthand knowledge of the events in question, but to make the deposition meaningful, the designee must be prepared to provide "complete, knowledgeable, and binding answers on behalf of the corporation." *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989); *Vietnam Antitrust Litig.*, 216 F.R.D. 168 (D. D.C. 2003). Rule 30(b)(6) requires corporate parties to prepare their designee to testify with "reasonable particularity" as to areas of which it has knowledge, and as to those areas as to which it does not have knowledge, it must be prepared to introduce evidence explaining why it lacks such knowledge. *United States v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C. 1996). Producing an unprepared witness for a Rule 30(b)(6) deposition is tantamount to failure to appear. *Remediation Products, Inc. v. Adventus Americas, Inc.* Case No. 3:07-cv-153 (W.D.N.C. September 30, 2010) *citing Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000). The fact that such preparation may be burdensome or expensive will not suffice; instead, the burden is on the corporation to show that it is *unduly* burdensome or *unduly* expensive to so prepare. *Grevera v. Microsoft Corp.*, No 3:12-cv-261 (W.D.N.C. October 11, 2013).

The designee's preparation should include a review of prior fact witness deposition testimony as well as documents and deposition exhibits, even if that review would be burdensome. *Calzaturficio S.C.A.R.P.A. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 36-37 (D. Mass. 2001); *Concerned Citizen v. Belle Haven Club*, 223 F.R.D. 39, 43 (D. Conn. 2004).

In cases where after depositions of a company's employees were taken, and then later Rule 30(b)(6) deposition notices are served that include topics partially covered in the previous corporate employee depositions, the courts have denied motions for protective orders seeking preclusion or limitation on the Rule 30(b)(6) deposition. *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 201 F.3d 1 (1st Cir. 2000) (burden on company to determine best designee to testify for corporation) (prior deposition of corporate fact witness did not preclude Rule 30(b)(6) deposition).

The case law is clear and unambiguous that Rule 30(b)(6) cannot be used to limit what is asked of the designated witness at a deposition. *King v. Pratt & Whitney*, 161 F.R.D.475(S.D. Fla. 1995). The description contained within the 30(b)(6) notice simply identifies the minimum to which a witness must be prepared to testify, not the maximum. *Detoy v. City and County of San Francisco*, 196 F.R.D.362, 366 (N.D. Cal 2000); *King*, supra at 475. The primary objective of discovery is to ensure that lawsuits are decided by what the facts reveal, not by what facts are concealed. "Generally, evidence objected to shall be taken subject to objections. As a rule, instructions not to answer questions at a deposition are improper. The only exception to Rule 30 is where serious harm would be caused."

## Opinions

Rule 30(b)(6) requires an organization "must not only testify about facts within [its] knowledge, but also its subjective beliefs and opinions." *United States v. Taylor*, 166 F.R.D. 356, 361-63 (M.D.N.C. 1996).

## Knowledge of Organization

Rule 30(b)(6) was intended to prevent serial depositions of various witnesses without knowledge from an organization and eliminate 'bandying," which is when several people are deposed but each in turn disclaims knowledge of facts that are clearly known to persons in the organization and thereby to the organization itself. Fed. R. Civ. P. 30(b)(6), Advisory Committee Note: 1970 Amendment. [T]he purpose of a Rule 30(b)(6) deposition is to get answers on the subject matter described with reasonable particularity by the opposing party, not to simply get answers limited to what the deponent happens to know." *Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 148, 152 (D.D.C. 1999).

If the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation. *Dravo Corp. v. Liberty Mut. Ins. Co.*, 164 F.R.D. 70, 75 (D.Neb.1995) (citing *Marker* [*v. Union Fid. Life Ins. Co.*], 125 F.R.D. [121,] 126 [(M.D.N.C.1989)]). Rule 30(b)(6) explicitly requires [an organization] to have persons testify on its behalf as to all matters known or reasonably available to it and, therefore, implicitly requires such persons to review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition. This interpretation is necessary in order to make the deposition a meaningful one and to prevent the "sandbagging" of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial. This would totally defeat the purpose of the discovery process. The Court understands that preparing for a Rule 30(b)(6) deposition can be burdensome. However, this is merely the result of the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business. *United States v. Taylor*, 166 F.R.D. 356, 361-362 (M.D.N.C.1996).

## Duty to Prepare

An organization cannot avoid its Rule 30(b)(6) obligations by "sticking its head in the sand" and refusing to look for the answers and then saying it does not know the answer. *In re Indep. Service Orgs. Antitrust Litig.*, 168 F.R.D. 651 653 (D. Kan. 1996). If the representative(s) cannot testify as to the corporation's collective information on the matters requested, then the corporation and/or its attorneys must collect the information and prepare the representative(s) so that the representative(s) can give complete, knowledgeable, and binding testimony. *Starlight Int'l Inc. v. Herlihy*, 186 F.R.D. 626. 638 (D. Kan. 1999). A thorough, 'reasonable" investigation may require an organization to rely on business records, other documents, interviews with present and former employees and the like. *United States v. Taylor*, 166 F.R.D. 356, 361, affirmed, 166 F.R.D. 367 (M.D.N.C. 1996). Imposing a duty to prepare its representative(s) ensures that an organization will not ambush an opponent by conducting half-hearted inquiry before the deposition but a thorough and vigorous one before trial. *Id.* at 362.

## No Objection because Difficult to Prepare

An organization cannot simply object to a Rule 30(b)(6) deposition, because the required investigation would be 'difficult' or 'time consuming.'" *Buycks-Roberson v. Citibank Federal Savings Bank*, 162 F.RD. 338. 343 (N.D. Ill. 1995). Even if corporate documents are voluminous and the review of those documents would be burdensome, a representative may still be required to review them in order to prepare for the deposition; such preparation is necessary because the individuals so deposed are required to testify to the knowledge of the corporation, not the individual. *Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co.*, 201 F.RD. 33 (D. Mass. 2001).

## Former Employees

If the corporation no longer employs individuals who have memory of distant events or such individuals are deceased, this "still does not relieve corporation from preparing designee for deposition of corporation to extent matters are reasonably available, whether from documents, past employees, or other sources; while corporation may plead lack of memory, if it wishes to assert positions based on testimony from third parties, or their documents, designee still must present opinions as to why corporation believes the facts should be so construed. *United States v. Taylor*, 166 F.R.D. 356, affirmed, 166 F.RD. 367 (M.D.N.C. 1996).

## More than one Designee

A party has a duty to designate more than one deponent if it would be necessary to do so in order to respond to the relevant areas of inquiry that is specified with reasonable particularity. *Alexander v. Federal Bureau of Investigation*, 186 F.RD. 148, 151 (D.D.C.1999).

## Diligent Effort to Designate

Defendant Seterus is advised pursuant to Rule 30(b)(6), to serve on the parties, a designation specifying one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and setting forth, for each person designated, the matters on which she/he will testify or produce documents or things. The person so designated shall testify as to matters known or reasonably available to the organization.

## INSTRUCTIONS AND DEFINITIONS

1. "Plaintiffs" means Michael A. Hager and Cynthia G. Hager, and their agents, attorneys, and representatives.

2. The term "Defendant," as well as Defendant's full or abbreviated name or a pronoun referring to Defendant Seterus, shall include Seterus, Inc., all holdings of Seterus, and all agents, representatives, employees, attorneys, or other persons acting for or on behalf of Defendant. The term "Defendant" further refers to any previous legal entities of which Seterus is the successor, including all agents, representatives, employees, attorneys or other persons acting for or on behalf of such previous legal entities.

4

3. "Plaintiffs' Numbers" shall mean the telephone numbers that belong or used to belong to Plaintiff(s), including (828) 245-6766, (828) 245-6374, and (704) 477-8925.

4. All other terms shall have the same meaning as identified in Plaintiffs' Complaint and/or Plaintiffs' First Set of Interrogatories to Defendant Seterus, Inc.

5. The terms "relating to," "relate to," "referring to" and "refer to" as used herein shall mean constituting, comprising, containing, setting forth, showing, disclosing, describing, explaining, summarizing, referring to, supporting, contradicting, proving, disproving, or tending to prove or disprove, directly or indirectly, in whole or in part, and should be given the broadest possible scope consistent with the discovery rules contained in the Federal Rules of Civil Procedure.

6. The terms "communication" and "communications" mean all written and/or oral inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, and e-mail.

7. The term "document" or "documents" is used in its broadest sense to include all material contemplated under Rule 34(a) of the Federal Rules of Civil Procedure, including, but not limited to "documents," "other tangible things," and any papers, or writings including drafts, and any mechanical or electronic recordings or records of any kind in your possession, custody and control, or of which you have knowledge, wherever located, whether an original or a copy, including agreements, financial statements, invoices, minutes, memoranda, e-mails, notes, records, medical or scientific articles or papers, interoffice communications, tapes or other records, telegrams, letters, photographs, drawings, data, reports, printed matter, publications, offers, bids, proposals or statements.

8. The terms "and", "and/or" and "or" are used inclusively, not exclusively and shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Matters set forth herein any information which might otherwise be construed to be outside their scope.

## MATTERS ON WHICH EXAMINATION IS REQUESTED

1. Basic information pertaining to Seterus' corporate history, including its organizational structure, owners, whether it has ever been purchased, its assets and liabilities, whether its assets have been purchased, whether its liabilities have been assumed, and any holding companies associated with Seterus.

2. Information concerning Seterus' operation and business model pertaining to the purchase and/or servicing of consumer debts, including information as to how Seterus services loans that are acquired while in a state of default, the composition of your loan portfolio(s), including but not limited to the proportion of loans that you own and/or service that were acquired while in a state of default, and basic information pertaining to the revenue and/or profit generated from the same.

5

3. Defendant's policies and procedures for ensuring compliance with the Fair Debt Collection Practices Act and/or the North Carolina Collection Agency Act.

4. Defendant's policies and procedures regarding the use of "suspense accounts."

5. Defendant's policies and procedures for accelerating consumers' debt obligations.

6. Defendant's policies and procedures for initiating foreclosure proceedings.

7. Defendant's policies and procedures for assessing fees, including late fees.

8. Defendant's policies and procedures for ensuring compliance with consumers' deeds of trust and/or promissory notes in the collection of debt.

9. Defendant's policies and procedures for reviewing and/or auditing its collection policies and procedures with regard to consumers' deeds of trusts.

10. Defendant's policies and procedures for hiring third parties to conduct property inspections and/or assessing property inspection fees.

11. Defendant's policies and procedures for collecting upon consumer debts, including but not limited to its use of telephonic communications and written correspondence.

12. Defendant's policies and procedures for recording telephone conversations with consumers and third parties.

13. Defendant's policies and procedures for document retention and destruction.

14. All training provided to Defendant's employees relating to the collection of any alleged debt during the Relevant Time Period.

15. Information concerning the specific background and history of the Loan and Seterus' purchase and servicing of the same, including detailed background regarding the circumstances surrounding your acquisition of the Debt.

16. A detailed explanation of any review, investigation, or audit by you in regards to the Loan and/or Debt, Deed of Trust, and Promissory Note.

17. Information concerning the specific employees or agents who have communicated with Plaintiffs, or either of them, the content of any such communications, and the location and content of documents pertaining to or containing any such communications.

18. Information concerning the system(s) Defendant maintains, operates, or has maintained at any relevant time to record contacts of your employees or agents with consumers in connection with the collection of debt.

6

19. A full description of any automatic or automated processes in place to alert individuals of any amount allegedly owed to you, including loan/mortgage payments, late fees, inspection fees, or any other amount alleged to be owed.

20. Information concerning the date, substance, and specific employee(s) or agents involved in sending or responding to written correspondence sent to or received from Plaintiffs, including any statements, invoices, statement of accounts, statement of amounts owed, or any other correspondence.

21. The specifics of Defendant's communications with Plaintiffs, including the purpose for each and every telephone call or written correspondence to Plaintiffs or Plaintiffs' Numbers.

22. Information concerning the dates, substance, and specific employee(s) or computer system(s) involved in sending written correspondence to Plaintiffs.

23. A detailed explanation and accounting of any and all payments made from Plaintiffs during the Relevant Time Period, including information pertaining to each instance in which Plaintiffs were alleged to have failed to make, or been late in making Loan payments or any other payment.

24. The specifics of any recorded communications with Plaintiffs and the substance of each such recording.

25. Each and every association(s) and/or contractual relationship(s) with any entities, contractors or sub-contractors which Defendant engaged or employed to provide property inspections in connection with the Property.

26. The factual basis for the answering and/or denial of any part of Plaintiffs' Complaint.

27. The factual basis for any affirmative defense to which Defendant contends it is entitled in this matter.

28. Defendant's Answers and Supplemental Answers to Plaintiffs' First Set of Interrogatories to Defendant and Defendant's Answers and Supplemental Answers to Plaintiffs' First Request for the Production of Documents to Defendant, including all documentation identified or produced by Defendant.

29. A detailed explanation of all documentation produced by Defendant in discovery.

30. Previous lawsuits filed against Defendant in which it was alleged Defendant violated the Fair Debt Collection Practices Act and/or the North Carolina Collection Agency Act.

7

Respectfully submitted this the 24th day of June, 2016.

MAGINNIS LAW, PLLC
*Counsel for Plaintiffs*

BY:

EDWARD H. MAGINNIS
N.C. State Bar No. 39317
ASA C. EDWARDS IV
N.C. State Bar No. 46000
KARL S. GWALTNEY
N.C. State Bar No. 45118
4801 Glenwood Avenue, Suite 310
Raleigh, North Carolina 27612
Telephone:    919.526.0450
Fax:          919.882.8763
emaginnis@maginnislaw.com
aedwards@maginnislaw.com
kgwaltney@maginnislaw.com

8

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil Action No.: 1:15-cv-222

| | |
|---|---|
| MICHAEL A. HAGER and CYNTHIA G. HAGER, <br><br> Plaintiffs, <br><br> v. <br><br> SETERUS, INC., <br><br> Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**CERTIFICATE OF SERVICE**

    The undersigned counsel hereby certifies that he has this day served a copy of the foregoing NOTICE OF DEPOSITION TO SETERUS, INC. upon all parties set forth below via facsimile, email, and by depositing the same into the exclusive care, custody and control of the United States Postal Service in a postage-paid envelope addressed to the following:

Jasmine K. Gardner
BRADLEY ARANT BOULT CUMMINGS LLP
Bank of America Corporate Center
100 N. Tryon Street, Suite 2690
Charlotte, North Carolina 28202
Fax: 704.338.6077
jgardner@bradley.com
*Counsel for Defendant Seterus, Inc.*

This the 24ᵗʰ day of June, 2016.

Karl S. Gwaltney

9

# EXHIBIT C

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
FILE NO.:  1:15-cv-222

_____

MICHAEL A. HAGER, and
CYNTHIA G. HAGER,

      Plaintiffs,

vs.

SETERUS, INC.,

      Defendants.

_____


_____


VIDEOTAPED DEPOSITION

OF

SETERUS, INC.

Taken by Corporate Representative
Achsah Jacob

_____



MAGINNIS LAW
4801 GLENWOOD AVENUE, SUITE 310
RALEIGH, NORTH CAROLINA


TUESDAY, JULY 19, 2016
10:00 A.M.
PAGES 1 THROUGH 193



2

```
 1                    ATTORNEYS OF RECORD PRESENT

 2

 3      On behalf of Plaintiffs:

 4          EDWARD H. MAGINNIS, ESQ.
            KARL S. GWALTNEY, ESQ.
 5          ASA C. EDWARDS, ESQ.
            Maginnis Law
 6          4801 Glenwood Avenue, Suite 310
            Raleigh, NC 27612
 7          emaginnis@maginnislaw.com
            kgwaltney@maginnislaw.com
 8          aedwards@maginnis.law.com

 9
        On behalf of Defendants:
10
            J. DOUGLAS MINOR, JR., ESQ.
11          Bradley Arant Boult Cummings
            188 East Capitol Street, Suite 400
12          Jackson, MS 39201
            dminor@babc.com
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    out --

2         A.   Can we take a break?

3         Q.   What's that?

4         A.   I'm sorry, can I get some more water?

5         Q.   Sure.

6         A.   Sorry.

7              MR. EDWARDS:  Off at 1:44.

8         (Recess taken from 1:44 to 1:45.)

9              MR. EDWARDS:  Back on at 1:45.

10   BY MR. MAGINNIS:

11        Q.   Okay.  Ms. Jacob, I promise we'll be done

12   soon.

13             My understanding of your testimony just now

14   is that if Seterus receives a payment in response to

15   an NC Final, then the debt is no longer 45 days due

16   and so that's sufficient to hold off the

17   acceleration process?

18        A.   That's correct.

19        Q.   Okay.  And is that -- is that Seterus'

20   policy just with regard to North Carolina?

21        A.   That's Seterus' policy for the loans where

22   we are accepting payments and we're able to apply

23   full contractual payment to the loan.

24        Q.   Okay.  So in response to a letter like

25   Exhibit 11, Seterus' policy, if they're accepting

1   payments, is if they receive an amount equal to a

2   normal monthly payment, they will not accelerate the

3   debt?

4       A.   As long as, right, it brings the loan less

5   than 45 days due.

6       Q.   Okay.  Where does it say that in this letter

7   that you will do that?

8       A.   It says in -- well, this is, as we know, is

9   a North Carolina demand letter because the loan is

10  greater than 45 days past due.  We know the customer

11  made a payment after this letter was sent out, which

12  in the transaction history showed that it brought

13  the account closer -- less than 45 days past due,

14  which voided this entire letter.

15      Q.   Right.  So -- and I believe the monthly

16  payment for the Hagers was -- at this time was

17  somewhere between 1,400 and $1,500; does that sound

18  right to you?

19      A.   Somewhere around there.

20      Q.   Okay.  So Seterus' policy is if they made a

21  payment of a normal monthly payment, somewhere

22  between 1,400 or 1,500, that would void this letter?

23      A.   Or a partial payment which was then pulled

24  from suspense and whatever was sitting in suspense

25  would be applied to it.

179

1       Q.   Okay.  So if they had a thousand bucks in

2   the suspense account and they paid $500, that would

3   void this letter as an example?

4       A.   That's correct.

5       Q.   Okay.  Where does it say that in this letter

6   that if you make one payment or enough such that one

7   payment is recorded, we won't do this, or does it

8   say that?

9       A.   Well, the expiration date provides really

10  the -- the timeline where the customer needs to make

11  some sort of payment so that the 45 days are not

12  past due.

13      Q.   Not some sort of payment, $3,204.72, that's

14  what it says, right?

15      A.   Yes.  And we're allowing the customer, we're

16  also -- yes.  We would like the $3,204.72.  But our

17  objective is not to foreclose on our customers.  Our

18  objective is to be able to take -- even if it's a

19  partial payment, if where -- if they're in the

20  bucket where a partial payment can be made, our

21  objective is to collect that payment to help them

22  stay in their house.  Because them making payments,

23  staying in their house helps us in our business as

24  well.  Foreclosing on them is really not, you know,

25  helpful to us nor to them.

180

1       Q.    Yeah.

2       A.    And so therefore, this letter is sent out

3    per the guidelines that are outlined and we allow

4    the customer -- we allow the customer to make that

5    partial payment.  And then when a full -- if a

6    partial payment does not equal the contractual

7    payment, then your -- then this letter still --

8    still stands.  But because a contractual payment is

9    able to be applied to the loan account, then we

10   don't have to continue with the -- this letter.

11      Q.    Seterus doesn't want to foreclose?

12      A.    That's correct.

13      Q.    It's expensive at a minimum, correct?

14      A.    Sure.

15      Q.    You don't want to kick people out of their

16   homes?

17      A.    We don't.

18      Q.    People don't want to be kicked out of their

19   homes?

20      A.    That's correct.

21      Q.    Why doesn't it say that in the letter?

22      A.    In my business -- I mean in my role, I'm

23   just here to testify on this letter and identify

24   that we do -- we were taking payments from the

25   Hagers when they made partial payments.  They never

# EXHIBIT D

# seterus™

**Physical Address**
14523 SW Millikan Way; Suite 200; Beaverton, OR 97005

**Business Hours (Pacific Time)**
Monday-Thursday 5 a.m. to 8 p.m.
Friday 5 a.m. to 6 p.m.

October 17, 2012

**Payments**
PO Box 7162; Pasadena, CA 91109-7162

**Correspondence**
PO Box 2008; Grand Rapids, MI 49501-2008

*L724K*

HAGER, CYNTHIA GAIL
669 SUTTLES RD
ELLENBORO, NC 28040

**Phone**
866.570.5277

**Fax**
866.578.5277

**Website**
www.seterus.com

RE: Loan No.: ████████, serviced by Seterus,Inc.

Your loan is in default due to non-payment of the amount below.

Amount Due:      $3,204.72
Amount Due By: December 6, 2012  ("Expiration Date")

EXHIBIT
D

We hereby demand that you bring your loan current ("cure the default") by paying the amount shown above. In addition, your regular payment may become due by the Expiration Date. You also should be aware that the delinquent amount of principal continues to accrue interest.

If full payment of the default amount is not received by us in the form of a certified check, cashier's check, or money order, on or before the Expiration Date, we will accelerate the maturity date of your loan and upon such acceleration the ENTIRE indebtedness of the loan, including principal, accrued interest, and all other sums due thereunder, shall, at once and without further notice, become immediately due and payable. Acceleration of the sums secured by the mortgage also may result in the sale of the premises. Any such action will not take place before 45 days from the date of this notice.

If you send only a partial payment, the loan still will be in default and we may keep the payment and still will accelerate the maturity date.

IF THE DEFAULT IS NOT CURED ON OR BEFORE THE EXPIRATION DATE,  WE AND THE LOAN OWNER  INTEND TO ENFORCE THE LOAN OWNER'S RIGHTS AND REMEDIES AND MAY PROCEED WITHOUT FURTHER NOTICE TO COMMENCE FORECLOSURE PROCEEDINGS. ADDITIONAL FEES SUCH AS FORECLOSURE COSTS AND LEGAL FEES MAY BE ADDED PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.

This notice of our intent to foreclose has no effect on your right to dispute the debt in writing as indicated in the debt validation letter we sent to you on October 17, 2012. The Fair Debt Collection Practices Act does not require us to wait until the end of the 30-day validation period before attempting to collect this debt. If, however, you request proof of the debt or the name and address of the original creditor within the 30-day

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. **COLORADO**: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 302, Lakewood, CO 80228. The office's phone number is 888.738.5576. **NEW YORK CITY**: 1331537, 1340663, 1340148. **TENNESSEE**: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.

HAGER, CYNTHIA GAIL
October 17, 2012
Loan Number: ████████

period upon your receipt of the debt validation letter, the law requires us to suspend our efforts to collect the debt until we mail the requested information to you.

Seterus-01-002630

HAGER, CYNTHIA GAIL
October 17, 2012
Loan Number: ▓▓▓▓▓

The following is an itemization of all past due amounts causing your loan to be in default, plus all charges that must be paid in order to bring your loan current:

Past Due Installment:

| | Totals |
|---|---|
| Principal | $459.04 |
| Interest | 2,406.60 |
| Escrow Installment | 0.00 |
| | $2,865.64 |

Other Open Charges:

| | |
|---|---|
| Late Charges | 381.39 |
| Property Inspections | 15.00 |
| | $396.39 |
| Less Suspense (Balance) | $57.31 |
| **TOTAL** | **$3,204.72** |

Nothing contained in this letter or in any other communication regarding the loan shall modify or waive any term or provision of the loan. The status of your loan may be reported to credit reporting agencies.

You have the right to reinstate your loan after acceleration and the right to bring a court action or assert in the foreclosure proceedings the nonexistence of a default or any other defense to acceleration and sale. If you reinstate your loan after acceleration, the loan no longer will be immediately due in full.

North Carolina law requires that we provide the following notices:

Options may be available to avoid foreclosure. You may discuss such options with us or a counseling agency approved by the United States Department of Housing and Urban Development (HUD). You may contact us in writing at PO Box 2008; Grand Rapids, MI 49501-2008; you may also call us at 866.570.5277 . The following are some of the HUD-approved counseling agencies operating within North Carolina:

Seterus-01-002631

HAGER, CYNTHIA GAIL
October 17, 2012
Loan Number: ███████

| Agency Name | Phone, Toll-free, Fax, Email and Website | Address |
|---|---|---|
| CCCS OF GREATER GREENSBORO (NC Foreclosure Prevention Fund) | **P:** 336.373.8882<br>**T:** 888.755.2227<br>**F:** 336.387.9167<br>**W:** www.familyservice-piedmont.org | 236 N. Mebane Street<br>Burlington, North Carolina  27217 |
| THE HOUSING PARTNERSHIP OF CHARLOTTE-MECKLENBURG | **P:** 704.342.0933 or 704.377.HOME (4663)<br>**F:** 704.342.2745<br>**W:** www.cmhp.org | 4601 Charlotte Park Drive<br>Suite 350<br>Charlotte, North Carolina 28217 |
| CONSUMER CREDIT COUNSELING SERVICE OF WNC, INC. - DBA - ONTRACK FINANCIAL EDUCATION & COUNSELING | **P:** 828.255.5166.110<br>**T:** 800.737.5485<br>**F:** 828.255.5129<br>**W:** www.ontrackwnc.org | 50 S French Broad Ave Ste 227<br>Asheville, North Carolina 28801 |
| NACA (NEIGHBORHOOD ASSISTANCE CORPORATION OF AMERICA) RALEIGH, NC | **P:** 919.855.8484<br>**T:** 888.297.5568<br>**E:** snesbitt@naca.com<br>**W:** www.naca.com | 3109 Poplarwood Court<br>Suite 110<br>Raleigh, North Carolina 27604 |
| MONROE-UNION COUNTY COMMUNITY DEVELOPMENT CORPORATION | **P:** 704.283.8804<br>**F:** 704.292.1037<br>**E:** gmuccdc@carolina.rr.com<br>**W:** www.muccdc.com | 349 East Franklin Street<br>Monroe, North Carolina  28110 |
| GREENVILLE HOUSING AUTHORITY | **P:** 252.329.4000<br>**F:** 252.329.4026<br>**W:** www.ghanc.net | 1103 Broad Street<br>Greenville, North Carolina  27834 |

Please note: The counseling agencies listed above are not affiliated with us. We are receiving no payment or compensation of any kind for mention of them in this letter. We do not endorse any particular counseling agency. We would be pleased to work with you and any approved counseling agency assisting you with your loan. For a complete list of HUD-approved counseling agencies operating within North Carolina, you can access the HUD website directly at www.hud.gov or through the link provided on our website at www.seterus.com.

Seterus-01-002632

HAGER, CYNTHIA GAIL
October 17, 2012
Loan Number: ███████

The contact information for the consumer complaint division of the North Carolina Office of the
Commissioner of Banks:

      Location: 316 W Edenton St., Raleigh, NC  27603
      Mailing:  4309 Mail Service Center, Raleigh, NC  27699-4309
      Phone:    888.384.3811
      Fax:      919.733.6918
      Website:  http://www.nccob.org

If you have any questions, please contact us at 866.570.5277.

Sincerely,

Seterus, Inc.

Seterus-01-002633

# seterus™

## United States Department of Housing and Urban Development Servicemembers Civil Relief Act Notice

### Legal Rights and Protections Under the SCRA

- Servicemembers on "active duty" or "active service," or a dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 U.S.C App. 501, et seq.) (SCRA).

### Who May Be Entitled to Legal Protections Under the SCRA?

- Active duty members of the Army, Navy, Air Force, Marine Corps, Coast Guard, and active service National Guard;
- Active servicemembers of the commissioned corps of the National Oceanic and Atmospheric Administration;
- Active servicemembers of the commissioned corps of the Public Health Service;
- United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action; and
- Dependents of the above (e.g., spouse or children).

### What Legal Protections Are Servicemembers Entitled to Under the SCRA?

- The SCRA states that a debt incurred by a servicemember, or spouse jointly, prior to entering military service shall not bear interest at a rate above 6 percent during the period of military service and until one year after the end of such service.
- The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within 9 months after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during, or within 9 months, after the servicemember's military service unless the creditor has obtained a court order approving the sale, foreclosure, or seizure of the real estate.

### How Does a Servicemember or Dependent Request Relief Under the SCRA?

- A servicemember or dependent, or both, may request relief under the SCRA by providing the lender/servicer a written notice with a copy of the servicemember's military orders.

Seterus, Inc.
PO Box 2008
Grand Rapids, MI 49501-2008

### How Does a Servicemember or Dependent Obtain Information About the SCRA?

- The U.S. Department of Defense's information resource is "Military One Source." Web site: http://www.militaryonesource.com. The toll-free telephone numbers for Military One Source are: From the United States: 1-800-342-9647. From outside the United States (with applicable access code): 800-342-9647-7. International Collect: 1-484-530-5908.
- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for each branch of the armed forces is available at: http://legalassistance.law.af.mil/content/locator.php.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. **COLORADO:** FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 302, Lakewood, CO 80228. The office's phone number is 888.738.5576. **NEW YORK CITY:** 1331537, 1340663, 1340148. **TENNESSEE:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.