UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROBERT J. HEINITZ, *et. al.*,
on Behalf of Themselves
and Others Similarly Situated,

                Plaintiffs,

    -against-                                       1:18-CV-1076 (LEK/ATB)

SETERUS, INC.,

                Defendant.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

On September 9, 2018, Plaintiffs Robert J. Heinitz and Sandra L. Heinitz filed this class action complaint against Seterus, Inc. on behalf of themselves and all others similarly situated. Dkt. 1 ("Complaint") ¶ 1. Plaintiffs assert two causes of action: violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA") and violation of New York General Business Law § 349 ("GBL § 349"). Plaintiffs claim that Defendant send letters ("New York Final Letters") informing homeowners that they are in default on their mortgages and falsely stating that unless the homeowners make full payment, Defendants will accelerate their loans and commence foreclosure proceedings. In reality, Plaintiffs allege, Defendants do not take this action if the homeowners bring their loans less than forty-five days delinquent.

Defendant filed a motion to dismiss under rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. Nos. 11 ("Motion"); 11-1 ("Memorandum"). Plaintiffs filed a response, Dkt. No. 12 ("Response"), and Defendant filed a reply, Dkt. No. 12 ("Reply"). Since then, both parties have submitted notices of supplemental authority, mostly relating to decisions involving similar allegations against the same Defendant in other district courts. See Dkt. Nos.

15, 16, 19, 20 ("Plaintiffs' Notices of Supplemental Authority"); 17, 21 ("Defendant's Notices of Supplemental Authority").

For the reasons that follow, the Motion is granted in part and denied in part.

## II.  BACKGROUND

Plaintiffs are citizens of Ulster County, New York, and own a home in Cottekill, New York. Compl. ¶ 11, 16. Plaintiffs' home is "secured by a mortgage owned, backed, or controlled by Federal National Mortgage Association ("Fannie Mae") that is serviced by [Defendant]." Id. ¶ 17. Defendant is a Delaware Corporation with a principal place of business in Research Triangle Park, North Carolina. Id. ¶ 12. Defendant is "a specialty mortgage servicer for high risk residential housing loans owned, backed, or controlled by Fannie Mae." Id. ¶ 18. "Plaintiffs' loan was delinquent when transferred to Seterus for servicing on or about March 1, 2015." Id. ¶ 22.

On December 20, 2017, Defendant sent Plaintiffs a letter informing them that their loan was in default. Id. ¶ 34 (citing Ex. A to the Compl.)). Plaintiffs assert that Defendant has sent substantially similar letters to "all borrowers in New York who are alleged to be more than 45 days delinquent on a loan that [Defendant] services." Id. ¶ 36. The letter to Plaintiffs—and allegedly all New York Final Letters—states:

> If full payment of the default amount is not received by us . . . on or before [the Expiration Date], we will accelerate the maturity date of your loan and upon such acceleration the ENTIRE balance of the loan, including principal, accrued interest, and all other sums due thereunder, shall, at once and without further notice, become immediately due and payable.

Id. ¶ 38 (citing Ex. A at 1) (brackets in Compl.; capitalization in Ex. A). The New York Letter also states:

> If you send only a partial payment, the loan still will be in default . . . IF THE DEFAULT IS NOT CURED ON OR BEFORE THE EXPIRATION DATE, THE LOAN OWNER AND WE INTEND TO ENFORCE THE LOAN OWNER'S RIGHTS AND

REMEDIES AND MAY PROCEED WITHOUT FURTHER NOTICE TO COMMENCE FORECLOSURE PROCEEDINGS.

Id. ¶ 39 (citing Ex. A at 1–2) (capitalization in Ex. A). The letter also states that Defendant is acting as a debt collector. Id. ¶ 37 (citing Ex. A at 1).

Plaintiffs allege that while the letter states Defendant will accelerate the loan if the full default amount is not payed, Defendant's actual policy is "not to accelerate loans that are less than 45 days delinquent." Id. ¶ 42. In a Federal Rule of Civil Procedure 30(b)(6) deposition in a different case, a legal mediation officer for Defendant testified that Defendant will not accelerate loans if the borrower brings the loan less than 45 days delinquent. Id. ¶ 46 (citing Exhibit C ("30(b)(6) Deposition"). Plaintiffs state that these letters cause consumers to wrongly believe that "their loans will be accelerated if they fail to fully cure their default prior to the 'expiration date,'" that "they will lose their homes if all arrearages to Seterus are not paid by the stated expiration date," and that "they will lose their homes if they do not bring their loan current by the stated expiration date." Id. ¶ 50–52.

**III. LEGAL STANDARD**

In reviewing a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004). A court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." Id.

Federal Rule of Civil Procedure 12(b)(6) requires that a complaint be dismissed if it "fail[s] to state a claim on which relief may be granted." To state a valid claim, a complaint must allege "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v.

3

Twombly, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 8(a)(2). The Court may disregard "legal conclusions couched as factual allegations" that are "devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, a court must take the "well-pleaded factual allegations" as true, id. at 679, and "draw[ ] all reasonable inferences in the plaintiff's favor," Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009). To "'nudge[ ] [the plaintiff's] claims across the line from conceivable to plausible,'" the facts need only "'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" Citizens United v. Schneiderman, 882 F.3d 374, 380 (2d Cir. 2018) (quoting Twombly, 550 U.S. at 556–57, 570).

When deciding a motion to dismiss under Rule 12(b)(6), "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). It may also consider "documents or information contained in [the] defendant's motion papers if the plaintiff has knowledge or possession of the material and relied on it in framing the complaint," as well as "facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." Envtl. Servs. v. Recycle Green Servs., 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014) (quoting In re Merrill Lynch & Co., 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003)).

**III. DISCUSSION**

    **A.  Standing**

Defendant argues that Plaintiffs lack Article III standing to maintain a claim because: (1) Plaintiffs have not alleged a particularized and concrete injury; and (2) Plaintiffs have not alleged an injury traceable to Defendant. The Court disagrees and finds that Plaintiffs have standing.

4

"The 'irreducible constitutional minimum' of standing consists of three elements . . . The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). "[I]njury to a legal interest must be 'concrete' as well as 'particularized' to satisfy the injury-in-fact element of standing." Strubel v. Comenity Bank, 842 F.3d 181, 188 (2d Cir. 2016) (citing Spokeo, 136 S. Ct. at 1548).

Defendants suggest that Plaintiffs do not allege a concrete and particularized injury because they merely allege a "bare procedural violation" of the FDCPA. Mem. at 6. "While tangible harms are most easily recognized as concrete injuries, Spokeo acknowledged that some intangible harms can also qualify as such." Strubel, 842 F.3d at 188 (citing Spokeo, 136 S. Ct. at 1549). "[W]here Congress confers a procedural right in order to protect a concrete interest, a violation of the procedure may demonstrate a sufficient 'risk of real harm' to the underlying interest to establish concrete injury without 'need [to] allege any *additional* harm beyond the one Congress has identified.'" Id. at 189 (quoting Spokeo, 136 S. Ct. at 1549) (emphasis in original).

The Second Circuit has repeatedly held that FDCPA violations protect concrete interests. "[T[here can be no dispute that Sections 1692e and g of the FDCPA protect an individual's concrete interests . . . The purpose of the FDCPA is, among other things, to protect debtors from abusive debt collection practices by debt collectors." Papetti v. Does 1-25, 691 F. App'x 24, 26 (2d Cir. 2017) (internal citations and quotations omitted); see also Zirogiannis v. Seterus, Inc., 707 F. App'x 724, 727 (2d Cir. 2017) ("[W]e have no trouble concluding that § 1692g of the FDCPA protect[s] an individual's concrete interests.") (internal quotations omitted); Cohen v. Rosicki, Rosicki & Assocs., P.C., 897 F.3d 75, 81 (2d Cir. 2018) ("Congress enacted the FDCPA

5

to protect against the abusive debt collection practices likely to disrupt a debtor's life.") (internal quotations omitted).

Defendant attempts to distinguish these Second Circuit cases because they involved debtors who were not provided specific information as required by the FDCPA. Reply at 2. But Defendant fails to explain how debtors' concrete interest in being protected from abusive debt collection practices is impacted any differently by the allegedly misleading information Defendant provided in this case. What Defendant really seems to be arguing is that the alleged FDCPA violation in this case is not causing serious harm. But such an argument reflects the extent of the injury and so goes to the merits of the claim, not standing. See id. (declining to address defendant's argument while analyzing standing because defendant's argument "that this misinformation is too 'trivial' to cause harm . . . goes to the materiality of the allegedly false information and "[w]e do not consider this merits issue as part of our standing analysis.").[1]

Defendant's argument that Plaintiffs failed to allege an injury fairly traceable to Defendant is also misguided. Defendant argues that Plaintiffs' alleged injury of "anxiety" about the New York Final Letter is not traceable to Defendant's conduct because that anxiety arises more from the fact that they are default than from the letter. Mem. at 6–7. But the fact that Plaintiffs may also have anxiety about their default does not mean Plaintiffs do not also have anxiety about the allegedly empty threat that their loan would be accelerated unless they made a full payment. See Wegner v. Seterus, No. 4:18-CV-2393 at *5 (M.D. Pa. May 15, 2019) ("[W]hile [plaintiff] might also have been experiencing anxiety over the basic fact that she was in default, and while [defendant] had the contractual right to accelerate the loan sometime,

---

[1] Because the FDCPA allegations allege a sufficiently concrete and particularized injury, the Court does not address parties' alternative arguments about whether Plaintiffs adequately pled a "real risk of harm." Response at 5; Reply at 2.

[plaintiff] traces her anxiety to [defendant's] assertions that acceleration was definite and imminent."); Martin v. Trott Law, P.C., 265 F. Supp. 3d 731, 746 (E.D. Mich. 2017), reconsideration denied, No. 15-12838, 2017 WL 9325508 (E.D. Mich. Sept. 22, 2017) ("[I]t is undisputed that the defendants sent the dunning letters in question to the named plaintiffs. Therefore, if the communications produced an injury in fact, that injury certainly is fairly traceable to the challenged conduct of the defendant[s].") (internal quotations omitted). Further, while Defendant is correct that Plaintiffs do not specify why they personally suffered anxiety as a result of the New York Final Letter, Plaintiffs' allegations are sufficient for standing. See Paz v. Portfolio Recovery Assocs., LLC, No. 15-CV-5073, 2016 WL 6833932, at *2 (N.D. Ill. Nov. 21, 2016), aff'd sub nom. Evans v. Portfolio Recovery Assocs., LLC, 889 F.3d 337 (7th Cir. 2018) (finding that plaintiff "has alleged that [defendant] failed to provide the disclosures to third party credit reporting agencies that are required by § 1692e(8)," "[d]espite not alleging emotional or monetary damages"). Thus, the Court finds that Plaintiffs have standing.

**B. Fair Debt Collection Practices Act**

Plaintiffs allege that Defendant violated 15 U.S.C. § 1692e and § 1692f. Compl. ¶ 91–117. Plaintiffs specifically allege violations of § 1692e(5) and (10). Compl. ¶ 102. These sections state:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt . . . the following conduct is a violation of this section:
>
> . . .
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> . . .

7

> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.

The Court analyzes "whether a communication is 'deceptive' by asking how the 'least sophisticated consumer' would interpret it." Huebner v. Midland Credit Mgmt., Inc., 897 F.3d 42, 51 (2d Cir. 2018), cert. denied sub nom. Huebner v. Midland Credit Mgmt., 139 S. Ct. 1282, (2019) (quoting Eades v. Kennedy, PC Law Offices, 799 F.3d 161, 173 (2d Cir. 2015)). "This is an objective standard, designed to protect all consumers, the gullible as well as the shrewd." Id. (internal quotations omitted). Several circuit courts have also recognized that to run afoul of § 1692e, a misstatement must be material. Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1033 (9th Cir. 2010). Thus, "[i]f a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA—even if it is false in some technical sense." Wahl v. Midland Credit Mgmt., Inc., 556 F.3d 643, 645–46 (7th Cir. 2009); see also Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP, 875 F.3d 128, 137 (2d Cir. 2017) (noting that other circuits have found § 1692e has a materiality requirement and "assum[ing] without deciding that a general 'materiality' requirement exists under section 1692e").

Here, Plaintiffs allege misstatements that would mislead the least sophisticated consumer. Plaintiffs allege, among other things, that "[t]he New York Final Letters cause the least sophisticated consumers to believe that they will lose their homes if all arrearages to Seterus are not paid by the stated expiration date; which is not true." Compl. ¶ 51. They also allege "New York Final Letter[s] have the potential of causing individuals to send additional money to Seterus that, absent the false and misleading statements, they could have utilized on other necessary expenditures, including food and utility payments," id. ¶ 56, and that the "misleading

8

threats of acceleration and foreclosure make it impossible for the least sophisticated consumer to make a rational decision in response to the New York Final Letter because it threatens immediate, irreversible consequences," id. ¶ 57.

Courts have repeatedly held that misstatements like this state a claim under the FDCPA. In Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22 (2d Cir. 1989), the Second Circuit found a violation of § 1692e(5) and (10) based on a notice that conveyed to the debtor that "legal action has already been or is about to be initiated and can be averted from running its course only by payment," where in reality no legal action had been taken or was imminent. Id. at 25. In Koepplinger v. Seterus, Inc., No. 17-CV-995, 2018 WL 4055268 (M.D.N.C. Aug. 24, 2018), report and recommendation adopted, No. 17-CV-995, 2018 WL 4401738 (M.D.N.C. Sept. 14, 2018), which involved a letter nearly identical to the NY Final Letter, the court found violations of 1692e because "the [North Carolina] Final Letter falsely informs debtors that, on pain of acceleration and foreclosure, they must pay the entire specified default amount by the Expiration Date" where in reality the debtors only needed to "bring their loans less than 45 days past due by the Expiration Date." Id. at *6.

Defendant argues that it is simply providing Plaintiffs a "grace period," Mem. at 10, and that "debt collectors do not violate the FDCPA by giving debtors more rights," Mem. at 11 (quoting Warran v. Smith Debnam Narron Drake Saintsing & Myers, LLP, No. 10-CV-71, 2011 WL 10858230, at *3 (E.D.N.C. Apr. 19, 2011). This is, to put it mildly, unconvincing. Plaintiffs' allegation is not that Defendants are failing to enforce all their rights. Plaintiffs' allegation is that Defendants are threatening action they do not intend to take. Defendant's unabashed attempt to characterize this as an act of generosity ignores the 30(b)(6) testimony stating that it is in Defendant's best interest *not* to foreclose on customers because "our objective is to collect that

payment." 30(b)(6) Dep. at 179. Thus, the allegation is not that Defendant kindly offers a "grace period." The allegation is that Defendant threatens serious action in an attempt to induce frightened debtors into making a payment, but does not actually intend to follow through on that action because it is not in Defendant's business interest. This is the sort of misstatement that falls clearly under § 1692e. See Koepplinger, 2018 WL 4055268, at *7 ("Defendant's argument regarding its undisclosed grace period tacitly concedes matters that would permit a reasonable fact-finder to deem the NC Final Letter deceptive.").[2]

Defendants have also submitted to the Court two cases in which similar FDCPA claims against the same Defendant were dismissed by other district courts. But Defendants fail to acknowledge that neither of these cases were dismissed on the merits of the FDCPA claim. In Barilla v. Seterus, Inc., No. 19-CV-46, 2019 WL 4060154 (M.D. Fla. Aug. 28, 2019), the court dismissed the FDCPA claim because it was based on a shotgun pleading, id. at *2, to which the Eleventh Circuit is particularly hostile, see Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1296 (11th Cir. 2002) ("This court has addressed the topic of shotgun pleadings on numerous occasions in the past, often at great length and always with great dismay."). And in Fordham v. Seterus, Inc., 18-CV-13808 (D.N.J. July 31, 2019), the court dismissed the FDCPA claim because "[t]he Amended Complaint does not attach or quote from any of the New Jersey Final Letters Fordham allegedly received. It also fails to give approximate dates as to when these letter were received, or the amount owed. Instead, it relies on and recites

---

[2] Defendant's fretting about how this will limit its ability to postpone acceleration in response to "natural disasters," Reply at 6, is also misplaced. This case is not about an unforeseen change in circumstances. This case is about Defendant threatening acceleration unless it receives full payment while—at the time it makes the threat—knowing full well that it will not accelerate if Plaintiff makes only a partial payment.

snippets of a letter sent to a borrower in North Carolina and alleges her letters were similar." Id. at *8. Here, in contrast, Plaintiffs rely on a letter sent to the New York Plaintiffs.

Defendant's argument that § 1692e(5) is inapplicable because it only applies to threat of litigation is also unconvincing. It is true that "the language of the communication, taken as a whole, must leave the least sophisticated reader with the impression that *some* type of legal action has already been or is about to be initiated and can be averted from running its course only by payment." Avila v. Riexinger & Assocs., LLC, No. 13-CV-4349, 2015 WL 1731542, at *4 (E.D.N.Y. Apr. 14, 2015), aff'd in part, vacated in part, 817 F.3d 72 (2d Cir. 2016), and aff'd in part, vacated in part, 644 F. App'x 19 (2d Cir. 2016) (quotations omitted) (emphasis in original). But it is also true that threatening foreclosure amounts to threatening legal action. See, e.g., Malowney v. Zacur, Graham & Costis, P.A., No. 11-CV-634, 2011 WL 1655572, at *2 (M.D. Fla. May 2, 2011) (denying motion to dismiss 1692e(5) claim when Defendant "had no intention of taking the legal action of foreclosure at the time the . . . letter was sent stating that Plaintiff's property was subject to foreclosure if he did not pay his overdue assessments.").[3]

Thus, Plaintiffs have alleged a violation of § 1692(e).[4]

---

[3] The Court acknowledges that the New York Final Letter states that if full payment is not received, Defendant "*will* accelerate" the loan and "*may* proceed without further notice to commence foreclosure proceedings." NY Final Letter at 1–2 (emphasis added). While Defendant makes a brief argument about how the use of the word "may" demonstrates it has not made definite legal threats under 1692e(5), Mem. at 12, it does not explain why the Court should only focus on this statement and not the threat that it "will accelerate" the loan. Neither party addresses whether there is a practical difference between acceleration and foreclosure (i.e., it is unclear if Defendant regularly accelerates a loan but does not commence foreclosure proceedings).

[4] Because the Court finds that "the FDCPA claim survives Rule 12(b)(6) dismissal based on the alleged Section 1692e violations . . . the Court need not determine whether the alleged Section 1692f violations independently support the FDCPA claim." Koepplinger v. Seterus, Inc., No. 17-CV-995, 2018 WL 4055268, at *4 (M.D.N.C. Aug. 24, 2018), report and recommendation adopted, No. 17-CV-995, 2018 WL 4401738 (M.D.N.C. Sept. 14, 2018).

### C.  New York General Business Law § 349

Under GBL § 349 "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349. Courts objectively define deceptive acts and practices as "representations or omissions . . . likely to mislead a reasonable consumer acting reasonably under the circumstances." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 26 (1995). "To state a claim for a § 349 violation, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 124 (2d Cir. 2017) (internal quotation omitted).

Here, Plaintiffs have satisfied the first two elements. First, Defendant does not appear to dispute that Defendant engaged in consumer-oriented conduct, as the alleged conduct has "a broad impact on consumers at large" and was not a "private contract dispute[] unique to the parties." M & T Mortg. Corp. v. White, 736 F. Supp. 2d 538, 571 (E.D.N.Y. 2010). Second, as discussed in the FDCPA context, the notice was materially misleading.

But Plaintiffs have not adequately alleged that they suffered an injury. Under GBL § 349, plaintiffs must allege harm, though it does not need to be pecuniary. Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 56, 720 N.E.2d 892, 897 (1999). This burden is not demanding. Contrary to Defendant's assertion, Mem. at 16, "a private action brought under § 349 does not require proof of actual reliance." Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005); Stutman v. Chem. Bank, 95 N.Y.2d 24, 29, 731 N.E.2d 608, 612 (2000) ("[A]s we have

repeatedly stated, reliance is not an element of a section 349 claim."). Further, "an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b) . . . but need only meet the bare-bones notice-pleading requirements of Rule 8(a)." Pelman, 396 F.3d at 511. "The plaintiff, however, must show that the defendant's 'material deceptive act' caused the injury." Stutman, 95 N.Y.2d at 29.

While Plaintiffs allege several potential injuries to the broader class, they have alleged no specific injury to themselves. In defending this omission in their response, Plaintiffs are only able to muster the conclusory assertion that "Plaintiffs' Complaint stated 'Seterus' wrongful and deceptive acts have caused injury and damages to Plaintiffs and class members and unless enjoined, will cause further irreparable injury.'" Response at 20 (citing Compl. ¶ 124). Plaintiffs may be correct that Defendant's "threat to Plaintiffs' shelter and creation of Plaintiffs' anxiety can most certainly be classified as an emotional injury," id. at 21 (citing Compl. ¶ 21), but Plaintiffs have not directly alleged that they suffered such an injury. While Plaintiffs' allegations may be sufficient to obtain standing and assert an FDCPA claim, they fail to state a claim under GBL § 349. See S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629, 637 (2d Cir. 1996) ("[S]ome injury, although not necessarily pecuniary, is necessary for recovery under § 349."); Levine v. Landy, 832 F. Supp. 2d 176 (N.D.N.Y. 2011). Thus, Plaintiffs' GBL § 349 must be dismissed with leave to replead specific allegations of injury.[5]

## V.    CONCLUSION

Accordingly, it is hereby:

---

[5] While it seems likely that Plaintiffs will be able to replead with a description of their specific injury, the Court notes that this dismissal is not a mere formality. It is possible, for instance, that Plaintiffs have no recollection of receiving the letter, and thus are unable to articulate any specific injury suffered as a result.

**ORDERED**, that Defendant's Motion to Dismiss (Dkt. No. 11) is **GRANTED** as to Plaintiffs' GBL § 349 claims. Plaintiffs' GBL § 349 are dismissed with leave to amend. Should Plaintiffs wish to file an amended complaint, they must do so by November 4, 2019; and it is further

**ORDERED**, that Defendants' Motion to Dismiss is **DENIED** as to Plaintiff's Fair Debt Collection Practices Act claims; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

DATED:    September 30, 2019
          Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge